William T. Monroe, Defendant in Error, v. Clair A. Orr, Plaintiff in Error.

Gen. No. 16,534.

1. BROKERS—*commissions.* The verdict of a jury awarding a broker one-half of the commission realized on a sale of stock will not be disturbed where, under conflicting evidence, the broker claimed the agreement called for half and defendant claimed that nothing was said in regard to the amount of commission.

2. ACCORD AND SATISFACTION—*what does not constitute.* The retaining of a check by a broker for services will not constitute an accord and satisfaction where good faith is lacking on the part of the principal or where there is no affirmative proof that the check was tendered in full payment of the claim.

3. BROKERS—*commissions.* Where conflicting evidence tends to show that a broker suggested certain parties as prospective purchasers and a sale resulted therefrom, the verdict of a jury allowing his commission for finding a purchaser will not be disturbed.

Error to the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed August 12, 1912.

MCCABE, CLOYES & KULL, for plaintiff in error.

ROSENTHAL, KURZ & HIRSCHL, for defendant in error.

MR. JUSTICE BAUME delivered the opinion of the court.

Defendant in error brought this suit in *assumpsit,*

with attachment in aid, against plaintiff in error in the Circuit Court, to recover a balance claimed to be due him for services in procuring a purchaser for the capital stock of the Belleville Gas & Electric Co., a corporation doing business in Belleville, Illinois. A trial by jury resulted in a verdict and judgment against plaintiff in error for $3,500.

The only debatable questions involved upon this record are questions of fact. First, whether or not plaintiff in error agreed to pay defendant in error for his services $5,000, or one-half of the commission realized by plaintiff in error from said sale; second, whether or not defendant in error was the procuring cause of said sale; third, whether or not there was an accord and satisfaction, whereby defendant in error accepted $1,500 as in full for his claim for services.

In March or April, 1906, plaintiff in error having an option for the purchase of 1,215 shares of the preferred stock and 1,633 shares of the common stock of the Belleville Gas & Electric Co. for $121,500, and acting upon the assumption that he could purchase the remaining shares of the capital stock of said company for $28,500, interviewed defendant in error with a view to securing his services in finding a purchaser for the entire capital stock of said company at a price sufficiently in advance of $150,000 to net them a substantial commission. In the first formal proposition made by plaintiff in error the selling price of the stock was to be fixed at $160,000, out of which $5,000 was to be paid to an officer of the corporation for his services in securing the option and closing the deal, leaving but $5,000 for commission, of which amount defendant in error was to have $2,500 for his services in procuring a purchaser. At the suggestion of defendant in error the selling price was fixed at $165,000, so that a commission of $10,000 might be realized. One, K. L. Ames, acquired all of the stock of the company by purchase for $165,000, and plaintiff in error received a draft for $10,000 as commission, and deposited $6,000 in the

First National Bank and $4,000 in the Woodlawn Trust & Savings Bank.

Defendant in error testified that when his services were solicited by plaintiff in error he asked plaintiff in error, "How much is there in it for me," and that plaintiff in error replied, "Half of what we make."

Isaac N. Powell, a witness called by defendant in error, testified that upon one occasion, when plaintiff in error requested him to procure transportation to East St. Louis, plaintiff in error stated that he was going there on a deal in which he and defendant in error were interested, and that defendant in error would get as much out of it as he would. At that time defendant in error was a member of the legislature, and the evidence tends to show that the suggestion that plaintiff in error could procure transportation from Powell was made by defendant in error, and that the interest of defendant in error in the transaction induced Powell to procure the transportation. Plaintiff in error denied having made the statement attributed to him by Powell, and also denied that he told defendant in error that he should have one-half of the commission.

As bearing upon the services performed by him, defendant in error testified that shortly after he received written data of the proposition from plaintiff in error, he told plaintiff in error that he would like to take up the matter with the "Dawes crowd"; that he went to the Central Trust Company bank for the purpose of interviewing Mr. Charles G. Dawes; that failing to see Mr. Dawes, he took the matter up with Mr. Edens, one of the officials of the bank, with whom he was acquainted, and was informed by Edens that Rufus Dawes was the party to take the matter up with; that in the evening of the same day he informed plaintiff in error of his conversation with Edens, and told plaintiff in error that if he would see Edens in the morning, Edens would introduce him to Rufus Dawes; that Mr.

Ames was the man to be sent to Belleville, and the proposition would be turned over to him. Plaintiff in error admitted that defendant in error suggested that he call on Edens, but denied that the name of either Rufus Dawes or Ames was mentioned by defendant in error. On the following morning plaintiff in error called on Edens, who introduced him to Rufus Dawes, who was conversant with the property, and expressed a disinclination to consider its purchase, but told plaintiff in error if he, Dawes, heard of anybody who would like to purchase the property he would let plaintiff in error know. A week later plaintiff in error received a communication from Rufus Dawes as follows:

"Please come in at your earliest convenience. I wish to see you regarding the situation at Belleville."

In response to this communication plaintiff in error called on Rufus Dawes, who introduced him to Ames, who investigated the property and purchased the stock of the company. During the progress of the negotiations involving the purchase of the stock by Ames, plaintiff in error frequently advised with defendant in error regarding the situation and treated defendant in error as an interested party in the transaction.

The evidence tends to show that after the sale was consummated and after plaintiff in error had received the commission of $10,000, defendant in error made several unsuccessful efforts to ascertain from plaintiff in error the amount of the commission, and whether or not it had been received by plaintiff in error. The draft for $10,000, in payment of the commission, bears date June 9, 1906. On June 13th, following, the parties left the home of defendant in error to go to the Woodlawn Trust & Savings Bank. Defendant in error testified that, as they went down the street together, plaintiff in error bemoaned the fact that he did not get as much as he expected, and finally said he had received $4,000, and that it did not look as though there would

be more than $1,500 in it for defendant in error; that when they arrived at the bank he gave plaintiff in error the latter's due bill for $200, which he held for money borrowed by plaintiff in error, and plaintiff in error gave him a check for $1,725; that he asked plaintiff in error what the $25 was for, and disclaimed any interest on the $200, stating it was merely a personal loan; that plaintiff in error replied, "That is all right," and walked out of the bank.

Plaintiff in error's version of what then occurred was as follows:

"I met him at his house on Kimbark avenue and went with him to the Woodlawn Bank. We were alone. Nothing was said especially on the way; nothing about the amount of money at all. General conversation; nothing special. On arriving at the bank I drew a check. I told him I was giving him a check for $1,725. First explaining that the $225 was in payment of a loan. I said I was going to give him $25 for the use of the $200 I had had for some two months or so. At first he did not want to take it. I said, 'That is all right; just take it; you are welcome to it,' and I added the $1,500, and that made $1,725. He said, 'What is that for?' and I said, 'That is for the Belleville deal.' And he said, 'Why that is not half of it, is it?' I then said, 'You did not expect half of it, did you?' He said, 'Why, that was the agreement.' I said, 'I did not understand it that way.' He took the check."

In view of the fact that the selling price of the stock had, at the suggestion of defendant in error, been fixed at a figure that would presumably allow a commission of $10,000, and the further fact that defendant in error expected to receive one-half of the commission, the statement made by the plaintiff in error that nothing was said about the amount of the commission which he had received and in which defendant in error was to participate, taxes our credulity. That plaintiff in error should without question have paid defendant in error $1,500 for services which plaintiff in error now

claims defendant in error did not render is unreasonable and contrary to the usual course of business dealing. The facts and circumstances in evidence tend to corroborate defendant in error's version of what occurred and to show that plaintiff in error falsely represented to defendant in error that he had only received a commission of $4,000.

The transaction wherein plaintiff in error gave to defendant in error the check for $1,725, which was retained by the latter, lacks two essential elements necessary to constitute an accord and satisfaction: first, good faith on the part of plaintiff in error; and, second, affirmative proof that the check was tendered in full payment of defendant in error's claim.

The controlling issues of fact were properly submitted to the jury, and upon the evidence adduced the verdict must be held to be conclusive against plaintiff in error.

The sixth instruction, tendered by plaintiff in error and given to the jury as modified by the court, was not improperly modified. The instruction, as modified, embodies the elements contained in the first and second instructions given at the instance of plaintiff in error, which elements were omitted in the instruction as tendered.

There is no error in the record and the judgment is affirmed.

*Judgment affirmed.*